**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| **Plaintiff,** | : | **Case No. 2:10-CR-194** |
| **v.** | : | **Judge Holschuh** |
| **STANLEY B. STRONG,** | : | |
| **Defendant.** | : | |
| | : | |

## <u>MEMORANDUM OPINION & ORDER</u>

Defendant Stanley B. Strong was indicted for failure to register as a sex offender in violation of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a). This matter is currently before the Court on Defendant's motion to dismiss the indictment on three constitutional grounds. (Doc. 22). For the reasons set forth below, the Court denies that motion.

## I.     Background

On May 16, 1996, Defendant Strong was convicted in the Franklin County Court of Common Pleas of Gross Sexual Imposition. Prior to being released from jail on August 25, 1998, he was notified of his duty, under Ohio law, to register for 10 years as a "sexually oriented offender." Strong subsequently moved to Georgia and registered there as a sex offender. He resided in Georgia until approximately September of 2009, when he returned to Ohio.

According to the United States, between August of 1998 and 2007, Strong was convicted of several other crimes and was incarcerated for at least five years. (Ex. A to Govt.'s Response). Pursuant to Ohio Revised Code § 2950.07(D), Strong's duty to register was tolled during each period of confinement. This meant that when he returned to Ohio in September of 2009, he still had

a duty to register as a sex offender. He failed to do so. He was arrested in the Southern District of Ohio on May 8, 2010 on unrelated charges. Strong was indicted on July 20, 2010 for failing to register as a sex offender. The indictment reads as follows:

> From on or about September 19, 2009, to on or about May 8, 2010, in the Southern District of Ohio and elsewhere, the defendant, STANLEY B. STRONG, having been required to register under the Sex Offender Registration and Notification Act, and having traveled in interstate or foreign commerce, did knowingly fail to register as required by the Sex Offender Registration and Notification Act. In violation of Title 18, United States Code, Section 2250(a).

On September 16, 2010, Strong filed a motion to dismiss the indictment, alleging that: (1) the portion of SORNA that delegates retroactivity standards and application to the Attorney General is unconstitutional because it violates the Non-Delegation Doctrine; (2) the Commerce Clause does not provide proper federal jurisdiction for this offense; and (3) application of SORNA to Strong violates due process because he was never given actual notice of his duties under SORNA.

## II.     Non-Delegation Doctrine

SORNA, the federal law governing registration requirements for sex offenders, became effective on July 27, 2006. Congress did not address the question of SORNA's applicability to sex offenders who had been convicted prior to that date. Rather, Congress delegated to the United States Attorney General the authority to determine whether SORNA should be applied retroactively. The relevant delegation of authority is set forth as follows:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913(d). On February 28, 2007, pursuant to this directive, the Attorney General

2

promulgated 28 C.F.R. § 72.3, which states that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act."[1]

Defendant maintains that Congress's delegation of authority violates the non-delegation doctrine. The Supreme Court long ago held that "Congress manifestly is not permitted to abdicate or transfer to others the essential legislative functions with which it is thus vested." Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935). "The non-delegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of government." Nevertheless, the Supreme Court has held that Congress may delegate certain tasks to other branches of government if it "clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." Mistretta v. United States, 488 U.S. 361, 371-73 (1989) (quoting American Power & Light Co. v. SEC, 329 U.S. 90, 105 (1946)).

According to Defendant, the non-delegation doctrine serves three purposes. First, it ensures that Congress, the branch of Government most responsive to the will of the people, remains accountable for important choices involving social policy. See Industrial Union Dep't AFL-CIO v. American Petroleum Inst., 448 U.S. 607, 685 (1980)(Rehnquist, J., dissenting). Second, it guarantees that, when Congress does delegate its authority, it provides an "intelligible principle" as a guide. Id. at 685-86. Third, it ensures that courts will have ascertainable standards when reviewing the exercise of delegated legislative discretion. Id. at 686. Defendant maintains that Congress's broad delegation of authority to the Attorney General to determine whether SORNA

---

[1] In United States v. Utesch, 596 F.3d 302, 307 (6th Cir. 2010), the Sixth Circuit held that, because the Attorney General failed to follow the Administrative Procedure Act's notice and comment requirements, the regulations did not become effective until August 1, 2008.

should be applied retroactively implicates each of these concerns. The Court disagrees.

Circuit courts that have addressed similar challenges have uniformly held that Congress's delegation of authority under § 16913(d) is constitutional. In <u>United States v. Guzman</u>, 591 F.3d 83 (2d Cir. 2010), the Second Circuit held that Congress's delegation of authority under SORNA was "highly circumscribed." The court noted that SORNA dictates "what crimes require registration, where, when, and how an offender must register, what information is required of registrants, and the elements and penalties for the federal crime of failure to register." <u>Id.</u> at 93 (internal citations omitted). <u>See also</u> <u>United States v. Whaley</u>, 577 F.3d 254, 264 (5th Cir. 2009) ("The delegation to the Attorney General to determine the retroactive applicability of SORNA is well within the limits of permissible delegation"); <u>United States v. Ambert</u>, 561 F.3d 1202, 1213 (11th Cir. 2009) ("We are satisfied that Congress has provided the Attorney General with 'intelligible principles' in the Sex Offender Registration and Notification Act. Congress has undeniably provided the Attorney General with a policy framework in § 16901 to guide his exercise of discretion under § 16913(d); and it has made a series of legislative judgments in §§ 16911, 16913, 16914 and 2250 that constrict the Attorney General's discretion to a narrow and defined category."). Defendant has cited to no case in which a court has found that Congress's delegation of authority under SORNA is unconstitutional.

In addition to challenging the manner in which Congress delegated its authority to determine SORNA's retroactivity, Defendant also challenges *to whom* Congress delegated its legislative authority. Defendant maintains that because the Attorney General's Office is "not a regulatory agency, but rather a law enforcement agency. . . whose chief function is the arrest and prosecution of lawbreakers," allowing the Attorney General "to decide what the law is, to whom it applies, and

4

how it must be complied with," is particularly offensive.  (Mot. to Dismiss at 14).

Congress, however, has often delegated to the Attorney General authority to promulgate rules related to various law enforcement matters.  See, e.g., 21 U.S.C. §§ 821 and 871(b) (delegating authority to promulgate rules related to registration and control of dispensing controlled substances); 8 U.S.C. § 1103(a) (charging Attorney General with the administration of laws governing immigration and naturalization); 18 U.S.C. § 4001(b) (vesting in the Attorney General the control and management of federal prisons).

In Touby v. United States, 500 U.S. 160 (1991), the Supreme Court rejected an argument very similar to the one now raised by Defendant.  That case dealt with 21 U.S.C. § 811(a), the statute delegating to the Attorney General the power to add or remove substances from the "schedules" of controlled substances.  Petitioner conceded that Congress had the authority to delegate power to *someone* in the Executive Branch, but argued that "allowing the Attorney General both to schedule a particular drug and to prosecute those who manufacture the drug violates the principle of separation of powers."  Id. at 167.  The Supreme Court rejected this argument, finding that "Petitioner's argument that temporary scheduling authority should have been vested in one executive officer rather than another does not implicate separation-of-powers concerns."  Id.

Defendant argues that Touby is distinguishable in that Congress in that case delegated much more limited power and provided much more guidance.  Nevertheless, as previously noted, no circuit court has found that Congress's delegation of authority under SORNA was unconstitutional. In this Court's view, delegating authority to determine SORNA's retroactivity to the Attorney General, as opposed to some other official or regulatory agency within the Executive Branch, does not raise any constitutional concerns.  Congress enacted SORNA to establish a comprehensive

nationwide registry of sex offenders, and the Attorney General's Office would appear to be the most logical federal agency to oversee Congress's mandate in this area.  As the Eleventh Circuit noted in Ambert,

> in granting the authority to the Attorney General, Congress was surely aware of the Attorney General's prior experience and expertise to further guide and constrain him in the limited exercise of discretion under SORNA. In 2005, a year prior to SORNA's enactment, the Attorney General's office designed and created a national sex offender registration database as a "safety resource, identifying location information on sex offenders residing, working, and going to school not only in their own neighborhoods but in other nearby states and communities as well." . . . By July 1, 2006, prior to the enactment of SORNA, all fifty states took some part in the national registry.

Ambert, 561 F.3d at 1214 n.3 (internal citation omitted).

For these reasons, the Court finds that Congress did not overstep its bounds in delegating to the Attorney General the authority to determine whether SORNA would be applied retroactively.

### III.   Commerce Clause

Defendant also argues that because SORNA "regulates a purely intrastate activity that does not substantially affect interstate commerce," it violates the Commerce Clause.  (Mot. at 14). Defendant notes that the Supreme Court limited the reach of the Commerce Clause in United States v. Lopez, 514 U.S. 549 (1995) (holding that Congress overstepped its bounds by enacting the Gun-Free School Zones Act, which regulated a purely intrastate activity), and United States v. Morrison, 529 U.S. 598 (2000) (striking down a portion of the Violence Against Women Act because the conduct being regulated involved a purely intrastate non-economic activity).  Defendant argues that, as in Lopez and Morrison, failing to register as a sex offender is a purely local activity that does not substantially affect interstate commerce.

As Defendant acknowledges, however, this argument has also been rejected by every circuit court to have considered it. See Guzman, 591 F.3d at 90 ("We have no difficulty concluding that § 2250(a) is a proper congressional exercise of the commerce power under Lopez."); United States v. Shenandoah, 595 F.3d 151, 160 (3d Cir. 2010) (holding SORNA "to be a proper regulation under Congress' commerce power"); United States v. Gould, 568 F.3d 459, 471 (4th Cir. 2009) (noting that a SORNA violation requires proof that the defendant traveled in interstate commerce); Whaley, 577 F.3d at 261 (concluding that "requiring sex offenders to register both before and after they travel in interstate commerce.. . is 'reasonably adapted' to the goal of ensuring that sex offenders register and update previous registrations when moving among jurisdictions."); United States v. May, 535 F.3d 912, 922 (8th Cir. 2008) (holding that SORNA contains "a sufficient nexus to interstate commerce."); United States v. George, 579 F.3d 962, 966 (9th Cir. 2009) (rejecting argument that "SORNA's registration requirements are outside of Congress's commerce clause powers"); United States v. Hinckley, 550 F.3d 926, 940 (10th Cir. 2008) ("By requiring that a sex offender travel in interstate commerce before finding a registration violation, SORNA remains well within the constitutional boundaries of the Commerce Clause."); Ambert, 561 F.3d at 1210 (concluding that "Congress had the commerce power to enact SORNA").

Defendant notes that the Sixth Circuit has not yet addressed this issue. However, this Court has no reason to believe that the Sixth Circuit would hold any differently. As the Eleventh Circuit noted in Ambert, SORNA "focuses on sex offenders . . . who travel in interstate commerce." Id. at 1211. This makes it factually distinguishable from the statutes at issue in Lopez and Morrison and, in this Court's view, renders it a proper exercise of Congress's power under the Commerce Clause.

IV.    **Due Process**

Finally, Defendant argues that the Indictment violates his due process rights because he was never given actual notice, by the United States or the State of Ohio, of SORNA's registration requirements.  In support, he cites to <u>Lambert v. California</u>, 355 U.S. 225 (1957), in which the Supreme Court reversed the conviction of a defendant who had no actual knowledge of a city ordinance requiring her to register as a felon.  The Court noted that although, as a general rule, ignorance of the law is no excuse, the conduct at issue, a failure to register, was "wholly passive." <u>Id.</u> at 228.  The Court concluded that, under these circumstances, due process required that the defendant have actual notice of the registration requirement.  "Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process. Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community."  <u>Id.</u> at 230.

The United States maintains that since Defendant <u>did</u> have actual notice of his duty to register as a sex offender under the laws of Ohio and Georgia, it does not matter whether he also had actual notice of SORNA's registration requirements.  The Sixth Circuit has held that when a sex offender has knowledge of his duty to register under state law, this qualifies as effective notice of the equivalent duty under SORNA, and forecloses any claimed due process violation.  <u>See</u> <u>United States v. Samuels</u>, 319 F. App'x 389, 393 (6th Cir. 2009), <u>overruled on other grounds by</u> <u>United States v. Utesch</u>, 596 F.3d 302 (6th Cir. 2010).  <u>See also</u> <u>Whaley</u>, 577 F.3d at 262 (distinguishing <u>Lambert</u> and citing numerous circuit court cases holding that "notice of a duty to register under state law is sufficient to satisfy the Due Process Clause."); <u>May</u>, 535 F.3d at 921 (same).

On November 22, 1999, several years prior to SORNA's enactment, Defendant signed a form

8

acknowledging his duty to register as a sex offender for ten years under Ohio law.  (Ex. B to Govt. Resp.).  As noted above, this period is statutorily tolled during any period of incarceration.[2]  On February 4, 2009, more than two years after SORNA was enacted, Defendant signed a similar form in Georgia, specifically acknowledging that he understood that was still required to register as a sex offender and that if he moved to another state, he was required to report his change of address to the local sheriff in the county where he last registered in Georgia and to the designated law enforcement agency in his new state of residence.   (Ex. C to Resp. Mem.).  Because Defendant had actual notice of his registration duties under state law, his due process challenge necessarily fails.  See Shenandoah, 595 F.3d at 160 (finding no due process violation where defendant had notice of his registration obligations based on information provided in state registration forms, "even if that notice did not explain that a consequence of failing to register would be a violation of federal law and state law.").[3]

_____

[2]  After SORNA was enacted in 2006, Ohio replaced its previous system for classifying sex offenders with the new 3-tier system required by Congress, and directed Ohio's Attorney General to reclassify sex offenders under the new system.  See Ohio Revised Code §§ 2950.031 and 2950.032.  Defendant notes that the Ohio Supreme Court recently struck down these statutes as violative of the separation-of-powers doctrine, and severed them from the rest of the sex offender registration statute.  See State v. Bodyke, --Ohio St.3d--, 2010-Ohio-2424, --N.E.2d--.  Defendant further notes that the effect of Bodyke is that those offenders who were reclassified by the Attorney General reverted to their original status.  The Court fails to see how this is relevant, especially since Defendant also maintains that "the Ohio Attorney General made no effort to reclassify Strong (who would have been a Tier I offender)."  (Mot. to Dismiss at 19).  Regardless of whether he was classified as a "sexually oriented offender" under the old system or a "Tier I offender" under the new system, he nevertheless had a duty to register as a sex offender and was aware of that duty during the time frame set forth in the Indictment.

[3]  Defendant also argues that, under 42 U.S.C. § 16917(b), which required the Attorney General to "prescribe rules" for implementing SORNA with respect to sex offenders convicted before the effective date of the statute, the Government had a duty to provide him proper notice of  SORNA's registration requirements.  However, as the Fourth Circuit held in Gould, 568 F.3d at 468, SORNA is not a specific intent statute and does not require that the defendant know that

**V.      Conclusion**

For the reasons stated above, the Court **DENIES** Defendant's motion to dismiss the

indictment on constitutional grounds.  (Doc. 22).

**IT IS SO ORDERED.**


Date: October 1, 2010                                    **/s/ John D. Holschuh**
                                                          John D. Holschuh, Judge
                                                          United States District Court

his failure to register violated federal law as opposed to state law.